UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARRY W. CATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-00876-TWP-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Barry W. Catt ("Mr. Catt") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.  BACKGROUND

### A.  Procedural History

On December 17, 2003, Mr. Catt filed an application for DIB, alleging a disability onset date of December 8, 2003. Mr. Catt's application was granted, but the Commissioner found that Mr. Catt's disability ended as of March 10, 2008. On June 17, 2008, Mr. Catt had a disability hearing with a Disability Hearing Officer, and the hearing officer upheld the determination that Mr. Catt was no longer disabled. Mr. Catt requested a hearing with an Administrative Law Judge, and appeared before Administrative Law Judge Charles W. Ardery ("the ALJ") on January 15, 2010. There was a supplemental hearing on May 13, 2010. Mr. Catt was represented

by counsel at the hearings. On September 24, 2010, the ALJ denied Mr. Catt's claims. On May 3, 2012, the Appeals Council denied Mr. Catt's request for review of the ALJ's decision, thus making it the final decision of the Commissioner for purposes of judicial review. Mr. Catt filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.     Factual Background**

At the time of the hearings in 2010, Mr. Catt was forty-nine (49) years old and had a high school education. Prior to the alleged onset date of his disability, he had past work experience as a boilermaker.[1] When Mr. Catt was first approved for DIB, he met Listing 6.02 for IgA nephropathy. In September 2004, Mr. Catt had a kidney transplant. Prior to his transplant his creatinine levels were as high as 4.7 milligrams per deciliter. On January 23, 2008, his creatinine levels were 1.3, which was "better than anytime in the past." R. at 361. His creatinine levels were considered "stable." R. at 75.

As of December 11, 2008, Mr. Catt was still taking medicine to prevent kidney rejection. He suffered from side effects, which included severe tremors of the hands, caused by the medication Prograff, so Mr. Catt must take the medication Cyclosporine to reduce the tremors. R. at 312. On February 11, 2009, Mr. Catt complained to his nephrologist that he was still suffering from tremors and started having joint pains in his fingers, shoulders, hips, and knees. R. at 665. At his January 7, 2010 visit, his neurologist reported that the tremor in Mr. Catt's hand is an essential tremor and is greater with the palm down; the neurologist also reported that the tremor is greater in the left arm than the right. R. at 714.

On May 26, 2010, Mr. Catt underwent a skeletal densitometry, which revealed a "normal bone mineral density." R. at 716. On July 9, 2010, Mr. Catt underwent an electromyography

---

[1] As a boilermaker, Mr. Catt would travel and weld in chemical plants, power houses, and refineries.

study and had decreased amplitude of the sural sensory nerve, which could be early peripheral neuropathy. R. at 725-26. On July 27, 2010, Mr. Catt visited a neurologist, who believed that Mr. Catt might have mild diabetic-induced peripheral neuropathy. R. at 723-24. Mr. Catt's nephrologist performed a physical residual functional capacity assessment On December 6, 2010. The assessment indicates Mr. Catt can continuously sit for one hour, stand and walk for 15 minutes (each), and total throughout an 8-hour workday he can sit for 2 hours, stand for 15 minutes and walk for 30 minutes. R. at 734.

## II.  DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant continues to be disabled, the ALJ must follow an eight-step sequential evaluation process: (1) whether the claimant is engaged in "substantial gainful activity"; (2) whether the claimant has an impairment that meets the requirements of a listing in the regulations; (3) whether the claimant's medical health improved; (4) whether the claimant's medical improvement will affect the claimant's ability to work; (5) if the claimant did not improve medically or the improvement does not affect the claimant's ability to work, whether there is an exception that disqualifies the claimant from being classified as disabled; (6) if the claimant has improved medically, could the claimant have "a severe impairment or combination

3

of impairments"; (7) whether the claimant is "unable to perform his past relevant work"; and (8) if the claimant is unable to perform his or her past work, could there be "any other work existing in significant numbers in the national economy." *Appleby v. Astrue*, No. 4:09–CV–27–WGH–SEB, 2010 WL 126185, *6 (S.D. Ind. Jan. 8, 2010) (citing 20 C.F.R. § 404.1594).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

The ALJ found that Mr. Catt did not meet the status requirement of the Act for DIB from March 10, 2008. At step one, the ALJ stated that Mr. Catt did not participate in substantial

gainful activity. At step two, the ALJ determined that Mr. Catt had the following impairments: status post kidney transplant due to IgA nephropathy. The ALJ further found that Mr. Catt has a mild peripheral neuropathy, which Dr. Fulton, M.D., believed could be due to diabetes. The ALJ found that Mr. Catt does not have an impairment or combination of impairments that meets the requirements of a listing in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). At step three, the ALJ stated that the creatinine levels are stable, between levels of 1.3 and 1.6, and that Mr. Catt's impairment had decreased. Therefore, the ALJ concluded that there was medical improvement. At step four, the ALJ found that Mr. Catt's improvement does affect his ability to work. The ALJ stated that Mr. Catt no longer meets the same listing because Mr. Catt has recovered from his IgA nephropathy and his kidney transplant on September 23, 2004 and because Mr. Catt's kidney function is stable. The ALJ did not need to address step five, because the ALJ found in the second step that Mr. Catt did not meet the requirements that are found in 20 CFR Part 404, Subpart P, Appendix 1. At step six, the ALJ found that Mr. Catt does have a severe impairment or combination of impairments, because his impairments have caused more than minimal limitation in his ability to work. At step seven, the ALJ found that Mr. Catt is unable to perform his past relevant work as a boilermaker. The vocational expert testified that Mr. Catt could no longer be a boilermaker, because he cannot work in that environment. At step eight, the ALJ found that, considering Mr. Catt's age, education, work experience, and work capacity, there are other occupations for Mr. Catt, including an inspector or information clerk.

## IV. DISCUSSION

Mr. Catt raises three issues in his appeal that he claims constitute reversible error. First, Mr. Catt argues the ALJ mischaracterized the testimony of the medical expert and medical records. Second, the ALJ failed to add updated medical evidence to determine whether Mr.

5

Catt's impairments met the Listing. Third, Mr. Catt argues the ALJ's hypothetical posed to the vocational expert was deficient.

**A.      The ALJ's mischaracterization was harmless error.**

   **1.      Mischaracterization of the Medical Expert's testimony**

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon*, 270 F.3d at 1176. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The Commissioner claims that there is substantial evidence to prove that Mr. Catt's condition did not meet the criteria of Listing 6.02(c). The ALJ had to determine whether Mr. Catt's suffered from:

> Impairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months. With [p]ersistent elevation of serum creatinine to 4 mg per deciliter (dL) (100 ml) or greater or reduction of creatinine clearance to 20 ml per minute or less, over at least 3 months, with one of the following:
>
> 1. Renal osteodystrophy (see 6.00E3) manifested by severe bone pain and appropriate medically acceptable imaging demonstrating abnormalities such as osteitis fibrosa, significant osteoporosis, osteomalacia, or pathologic fractures; or
> 2. Persistent motor or sensory neuropathy (see 6.00E4); or
> 3. Persistent fluid overload syndrome with:
> a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg; or
> b. Persistent signs of vascular congestion despite prescribed therapy (see 6.00B5); or
> 4. Persistent anorexia with weight loss determined by body mass index (BMI) of less than 18.0, calculated on at least two evaluations at least 30 days apart within a consecutive 6–month period.

20 C.F.R. Pt. 404, Subpt. P, Appl. 1 § 6.02(c) (2013).

Mr. Catt's post-transplant creatinine levels never reached four milligrams per deciliter, which is the first condition of 6.02(c). R. at 26, 92, 123, 124, 125, 130, 136, 138, 142, 143, 351, 361, 365, 608, 610, 613, 617, 619, 623, 625, 627, 631, 633, 635, 637, 639, 643, 645, 647. The Commissioner argues that the ALJ was correct in its finding that Mr. Catt's medical condition does not meet Listing 6.02(c).

To the contrary, Mr. Catt claims that the ALJ misrepresented medical expert, "Dr. Manders", testimony. Because Mr. Catt's creatinine levels of 1.3, 1.4, 1.4, and 1.7 milligrams per deciliter, Dr. Manders testified that Mr. Catt has persistent elevation of serum creatinine, which he said is the first condition of Listing 6.02(c). In actuality, the first condition of Listing 6.02 is "[p]ersistent elevation of serum creatinine to 4 mg per deciliter." All of Mr. Catt's creatinine levels are below 4 mg, so the creatinine levels do not meet the first level. Therefore, Dr. Manders was mistaken. Additionally, the ALJ stated that Dr. Manders testified that Mr. Catt "no longer meets or medically equals the criteria of Listing 6.02." R. at 156. The Court agrees with the ALJ that Dr. Manders' testimony does support the ALJ's finding that Mr. Catt no longer meets or medically equals the criteria of Listing 6.02.

### 2. Mischaracterization of medical reports

Mr. Catt claims that the ALJ made broad misstatements from the evidence and doctor statements. The ALJ stated that Dr. Cavaghan wrote in Ex. C at 9, 34, and 42 that Mr. Catt's creatinine levels are doing well, R. at 158, but Ex. C at 9, 34, and 42 is about Mr. Catt's diabetes and do not mention Mr. Catt's creatinine levels. Therefore, Mr. Catt claims that there was mischaracterization.

Mr. Catt asserts that this error is similar to the error in *Tinsley v. Barnhart*, No. IP 02-990-C-B/S, *3-5 (S.D. Ind. Apr. 21, 2004), which dealt with an ALJ's opinion stating that the

claimant had a "normal range of motion," but the claimant's physicians' reports stated the claimant had significant scoliosis and vertebral distortion, difficulty with extension, decrease range of motion in the dorsolumbar spine, etc. This case is different from Mr. Catt's situation, because if the ALJ realized that Ex. C at 9, 34, 42 were about diabetes, then the ALJ would not have had a different conclusion. In *Tinsley*, the ALJ's mistake did affect his or her decision.

The Commissioner claims that the mischaracterization was harmless error. If the Court finds the mischaracterization as harmless error, then the Court does not need to remand this case. *Collier ex rel. K.L.C. v. Astrue*, No. 1:09-CV-0066-LJM-TAB, 2010 WL 481038, *5 (S.D. Ind. Feb. 1, 2010) (citing *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003)). The fact is Mr. Catt's creatinine levels were still stable and below the levels necessary to meet the Listing, thus the ALJ would still reach the same conclusion if he did not make this mischaracterization. R. at 26, 92, 123, 124, 125, 130, 136, 138, 142, 143, 351, 361, 365, 608, 610, 613, 617, 619, 623, 625, 627, 631, 633, 635, 637, 639, 643, 645, 647. Because the ALJ would have made the same decision whether there was this mischaracterization or not, the Court finds this mischaracterization harmless error. Therefore, the Court will not remand the case for this issue.

**B.    The ALJ did not err in declining to obtain an updated medical opinion.**

Mr. Catt claims that Dr. Manders requested additional tests and an x-ray, so the ALJ should have given the final results of these tests to Dr. Manders before asking for a final opinion. However, the ALJ stated, "Dr. Manders had little to add but the conclusion that from all appearances [Mr. Catt] has indeed fully recovered." R. at 159. Dr. Manders did testify that the creatinine levels were stable, R. at 815, and that Mr. Catt did not meet 1, 2, 3, or 4 of Listing 6.02(c). R. at 799. Therefore, the Court finds that the ALJ adequately supported his conclusion that Mr. Catt no longer met the requirements in Listing 6.02(c) using Dr. Manders' testimony.

"An updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made." SSR 96-6p, 1996 WL 374180 (July 2, 1996). However, SSR 96-6p also states that

> [A]n administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of impairments.

SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Mr. Catt claims that if the ALJ had waited to get more evidence, then his determination on Listing 6.02(c) would have changed. Mr. Catt mentioned a skeletal densitometry taken on May 26, 2010, which proved that Mr. Catt has "normal bone mineral density." Dkt. 14 at 5. Mr. Catt also mentioned an electromyography study on July 9, 2010, which proved that he has "possible diabetic induced peripheral neuropathy." Dkt. 14 at 5. If this evidence were presented to the ALJ, Mr. Catt believes the ALJ's opinion could have changed, because Mr. Catt might have proved that he met subsections 1 and 2 of Listing 6.02(c). However, Dr. Manders testified that Mr. Catt's creatinine levels were stable; also, Mr. Catt did not meet the first condition, which is that his creatinine levels had to be at least 4 mg. Because Mr. Catt did not meet the first condition, the ALJ did not err in declining to obtain an updated medical opinion regarding the other requirements under Listing 6.02(c).

## C.     The ALJ's hypothetical posed to the vocational expert was not in error.

Lastly, Mr. Catt argues that the ALJ posed a factually deficient interrogatory to Gail Corn, the vocational expert ("the VE"). The ALJ asked the following hypothetical question:

> Assume a hypothetical individual who was born on June 6, 1960, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as [a boilermaker]. Assume further that this individual has the residual functional capacity (RFC) to perform a

9

> full range of work at all exertional levels but with the following nonexertional limitations: Assume that the claimant can perform light work but is limited further by essential tremors in his hands. Furthermore, the claimant could not be around smoke, fumes or any other type of bad air.

R. at 309.

Mr. Catt claims that "not be[ing] around smoke, fumes or any other type of bad air" is different from the RFC of being "free of airborne germs/respiratory irritants, such a [sic] dust, fumes, gases and orders." R. at 157. Mr. Catt also claims that the RFC used "is much more specific and restrictive than the [hypothetical] proposed to the VE, yet the ALJ relied on the VE's response to conclude that Mr. Catt can perform work as an inspector or information clerk." Dkt. 14 at 14.

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). This district court has previously found that the hypothetical posed to the VE need not be the exact same language. *Calderon v. Astrue*, No. 1:12-CV-00783-JMS-MJD, 2013 WL 139698 (S.D. Ind. Jan. 11, 2013). In *Calderon*, the ALJ used the phrase "stand/sit option," instead of an "at will sit/stand option." *Id.* at *4. "[A]ny other type of bad air" should include "airborne germs/respiratory irritants, such as dust, fumes, gases and odors." Here, the ALJ used language in the hypothetical that includes the limitations set forth in the RFC.

The ALJ must pose a hypothetical that contains all limitations "to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of applicant's limitations." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). It is highly unlikely that Mr. Catt will have to face "airborne germs/respiratory irritants" as an inspector or an information clerk, as the ALJ told the VE to exclude jobs with exposure to

"any type of bad air". In this regard, the alleged mistake was not material, because Mr. Catt can perform both jobs. Therefore, the Court finds that the ALJ listed all of the limitations in the hypothetical posed to the VE.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

Date: 09/23/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
HANKEY LAW OFFICE P.C.
charleshankey@hankeylawoffice.com

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov